1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12   UNITED STATES OF AMERICA,        No. 2:19-cr-00218 WBS

13                Plaintiff,

14        v.                          ORDER RE: MOTION FOR NEW
                                      TRIAL
15   EDMUND KEMPRUD,

16                Defendant.

17

18                          ----oo0oo----

19        Defendant has moved for a new trial under Federal Rule

20   of Criminal Procedure 33 after a jury found him guilty on all

21   fourteen counts in the indictment.  (Docket No. 230.)  The court

22   held a hearing on the motion on February 7, 2022.

23        Under Federal Rule of Criminal Procedure 33(a), a

24   "court may vacate any judgment and grant a new trial if the

25   interest of justice so requires."  In evaluating a motion for a

26   new trial under Rule 33, "[t]he court is not obliged to view the

27   evidence in the light most favorable to the verdict, and it is

28

                                1

1  free to weigh the evidence and evaluate for itself the
2  credibility of the witnesses."  Id.

3       The burden of justifying a new trial rests with the
4  defendant, United States v. Endicott, 869 F.2d 452, 454 (9th Cir.
5  1989), and "[a] motion for new trial is directed to the
6  discretion of the judge," United States v. Pimentel, 654 F.2d
7  538, 545 (9th Cir. 1981).  Accord United States v. Kellington,
8  217 F.3d 1084, 1097 (9th Cir. 2000) (district court's decision to
9  grant or deny a new trial is reviewed for abuse of discretion).
10 While the burden on a motion for new trial is not as demanding as
11 that for a motion for acquittal, such motions are generally
12 disfavored and should only be granted in exceptional cases.  See
13 United States v. Del Toro-Barboza, 673 F.3d 1136, 1153 (9th Cir.
14 2012).

15 I.   Government's Closing Statement

16      Defendant first argues that a new trial is warranted
17 due to the government's repeated references to the "standard of
18 care" during closing arguments.  In his reply brief, defendant
19 also notes the government's use of this term during its opening
20 statement and the testimony of government witness Dr. Robert
21 Franklin, who repeatedly used the term "standard of practice,"
22 which he defined as "what a reasonable, rational, prudent
23 physician with adequate training would do in a given set of
24 circumstances."  (See, e.g., Reply Ex. B at 4-5, 93-95 (Docket
25 No. 250-1).)

26      In defendant's view, the government's repeated
27 references to the standard of care, in combination with Dr.
28 Franklin's testimony, may have confused the jury and allowed it

to convict him based on a determination that he committed medical malpractice or negligence.  It is significant to note in this regard however that Dr. Franklin never expressed an opinion as to whether defendant's conduct in this case was consistent with the standard of practice as he defined it.

The court recognizes that the term "standard of care" is distinct from the terms "outside the usual course of professional practice," and "without a legitimate medical purpose" as defined by the Ninth Circuit in United States v. Feingold, 454 F.3d 1001, 1009-12 (9th Cir. 2006).  However, in the context of this case the court is satisfied that the jury was not confused into equating the two separate concepts.  The court properly instructed the jury on more than one occasion that the statements of counsel were only argument and that the jury was to follow the court's instructions on the law.[1]  (See, e.g., Docket Nos. 215 at 2; Mot. Ex. A at 13-14, 41, 73 (Docket No. 230-1).)

The court also properly instructed the jury that to find defendant guilty on each count it must find that (1) the defendant knowingly distributed the controlled substance specified in the respective count in the indictment; (2) the distribution "was outside the usual course of professional practice"; (3) the distribution "was without a legitimate medical purpose"; (4) the defendant acted with the intent to distribute outside the usual course of professional practice; and (5) the defendant acted with the intent to distribute without a

---

[1]    The court also instructed the jury that the lawyers' arguments, questions, and statements were not evidence.  (Docket No. 230-1 at 6; Mot. Ex. A at 75.)

legitimate medical purpose.[2]  (Docket No. 215 at 20-21; Mot. Ex. A at 81-82.)  As in <u>Feingold</u>, these instructions "required a finding of intent, not merely a finding of malpractice."  <u>See</u> 454 F.3d at 1009.

It is also significant to note that under <u>Feingold</u>, the standard of care is not completely irrelevant.  The court properly instructed the jury pursuant to <u>Feingold</u>, 454 F.3d at 1009-12, that in determining whether the defendant acted outside the usual course of professional practice, it "may consider the standards to which medical professionals generally hold themselves, including accepted standards of care among medical professionals."  (Docket No. 215 at 21; Mot. Ex. A at 82.)  And the court correctly instructed the jury that it could not find the defendant guilty if it found that he "in good faith reasonably believed or intended that his prescriptions fell within the usual course of professional practice."  (Docket No. 215 at 21; Mot. Ex. A at 82.)

In sum, any harm that may have been caused by the

---

[2]     The court also notes that the government did explain in closing that "standard of care" meant that the prescriptions "were not within the usual course of practice, and there was no legitimate purpose" or "not the usual course of practice and not a legitimate medical purpose."  (<u>See</u> Mot. Ex. A at 5; <u>see also</u> <u>id.</u> at 6 (noting that the standard of care "is about whether these prescriptions were issued within the usual course of professional practice, and whether they were issued for a legitimate medical purpose").)  The government also explained that the jury must find that the defendant <u>intended</u> to prescribe the drugs outside the usual course of professional practice and without a legitimate medical purpose.  (<u>Id.</u> at 24.)  In other words, the government never argued that the jury could find defendant guilty based solely on a finding of malpractice or conduct merely "outside the standard of care" and did not adopt Dr. Franklin's definition of the standard of practice.

4

government's reference to "the standard of care" and similar language was cured by these and all of the court's instructions during trial.  Thus, the government's repeated use of the term "standard of care" in closing does not warrant a new trial.

II.  <u>CURES Data and Agent McGlinchey's Testimony</u>

Defendant next argues that Government Exhibit 148 and Agent McGlinchey's accompanying testimony were erroneously admitted.  Exhibit 148 listed the number of prescriptions of hydrocodone, oxycodone, and alprazolam defendant prescribed to patients seen at his Tracy office in 2015, 2016, 2017, and 2018, based on data submitted to California's CURES database.  (Mot. Ex. B (Docket No. 230-1).)  While the numbers of these prescriptions may be low compared to those at issue in <u>United States v. Lauge</u>, 971 F.3d 1032, 1036 (9th Cir. 2020), these numbers, and the pattern of a sharp increase in these numbers each year, were nevertheless probative of defendant's knowledge, intent, absence of mistake, and lack of accident with respect to the prescriptions charged in the indictment under Federal Rule of Evidence 404(b).  <u>See</u> <u>United States v. Bailey</u>, 696 F.3d 794, 799 (9th Cir. 2012).  Further, the court does not find that their probative value is substantially outweighed by the danger of unfair prejudice.  <u>See</u> <u>United States v. Miller</u>, 874 F.2d 1255, 1268 (9th Cir. 1989); Fed. R. Evid. 403.

The court also does not find that the admission of Agent McGlinchey's testimony warrants a new trial, either alone or in combination with Exhibit 148.  Defendant takes issue with McGlinchey's testimony that defendant told him he was aware that "patients might be conning him to get narcotics."  (Mot. at 14.)

5

1   While defendant contends that Agent McGlinchey misquoted and

2   misinterpreted his words during the interview, a reasonable

3   interpretation of defendant's statement, especially in light of

4   his other statements during the interview, is that he knew some

5   patients were seeking pills for improper purposes.  This

6   interpretation supported the government's theory that defendant

7   intentionally issued the prescriptions in the indictment outside

8   the usual course of professional practice and without a

9   legitimate medical purpose.  Overall, Agent McGlinchey's

10  testimony was probative of defendant's intent and was not

11  unfairly prejudicial.

12  III. Audio Clip

13          Defendant next contends a new trial is warranted

14  because the government committed prosecutorial misconduct when it

15  played a portion of Government Exhibit 166, an audio clip excerpt

16  from defendant's interview with law enforcement, which the court

17  had previously ruled inadmissible.  (See Mot. Ex. F (Docket No.

18  230-1).)  The government played a five-second portion in which

19  Agent McGlinchey asked defendant "[D]o you feel any

20  responsibility for that?  Or accountability for not verifying

21  anything?", to which defendant responded, "Uh, sure."  (Id.;

22  Opp'n Ex. A at 89 (Docket No. 242).)  Agent McGlinchey testified

23  to his interpretation of this dialogue, stating that it referred

24  to defendant's failure to check the CURES database and request

25  the undercover agent's medical history "or anything like that"

26  before issuing the prescriptions in the indictment.  (Opp'n Ex. A

27  at 89.)

28          However, the court later struck both Exhibit 166 and

1   Agent McGlinchey's related testimony, explaining to the jury it

2   must disregard that evidence because (1) it was not clear what

3   Agent McGlinchey was referring to in the interview, (2) the

4   exhibit never should have been played for the jury because of the

5   possibility of confusion, and (3) what Agent McGlinchey thought

6   the statement meant and what defendant thought it meant could be

7   two different things.  (Opp'n Ex. A at 153-54.)  In light of this

8   curative instruction and all the evidence at trial, defendant has

9   not shown that the government's conduct more probably than not

10  materially affected the fairness of the trial.  See United States

11  v. Atcheson, 94 F.3d 1237, 1244 (9th Cir. 1996).

12  IV.  Pharmacist Testimony

13          Defendant last takes issue with the testimony of Wal-

14  Mart pharmacist Darlene Bagshaw and Reich's Pharmacy pharmacist

15  Harold Reich.  The court immediately struck Ms. Bagshaw's

16  testimony and instructed the jury to disregard "everything that

17  this witness has said" after she testified that she never

18  communicated her concerns regarding defendant's prescriptions to

19  the defendant or anyone at his office.  (See Opp'n Ex. A at 42-

20  44.)  The court is satisfied that this curative instruction,

21  along with the court's final jury instructions (Mot. Ex. A at 76;

22  Docket No. 215 at 6), were sufficient to cure any unfair

23  prejudice her testimony may have caused.  See, e.g., Aguilar v.

24  Alexander, 125 F.3d 815, 820 (9th Cir. 1997).  Indeed, the court

25  doubts that the stricken testimony would have caused any

26  prejudice at all, given that defendant himself admitted that he

27  was aware that multiple pharmacies, including Wal-Mart, refused

28  to fill his prescriptions.  (See Opp'n Ex. A at 96-97.)

7

1    The court also reaffirms its prior determination that

2  Mr. Reich's testimony was relevant because Mr. Reich conveyed his

3  concerns regarding defendant's prescription practices to Steve

4  White, who was employed as a physician assistant by defendant and

5  was therefore defendant's agent.  (Opp'n Ex. A at 53-55.)

6  Further, as noted above, because defendant admitted that he knew

7  multiple pharmacies refused to fill his prescriptions, there is

8  no unfair prejudice from such testimony.  Accordingly, the

9  admission of Ms. Bagshaw's and Mr. Reich's testimony do not weigh

10  in favor of a new trial, nor does the court find that the issues

11  identified in defendant's motion cumulatively warrant a new

12  trial.

13    IT IS THEREFORE ORDERED that defendant's Motion for a

14  New Trial (Docket No. 230) be, and the same hereby is, DENIED.

15  Dated:  February 9, 2022

16                          WILLIAM B. SHUBB
                            UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

8